**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
:
**DENNIS NATHAN and NAAMAN S. NATHAN,** :
:
                    **Plaintiffs,** :
:     **06 Civ. 5973 (HB)**
         - against - :
:     **OPINION & ORDER**
**MARK A. COOPER and JEMA G. COOPER,** :
:
                    **Defendants.** :
:
------------------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:**

### I. BACKGROUND

On May 8, 2006, Dennis and Namaan Nathan ("Plaintiffs") entered into a real estate contract with Mark and Jema Cooper ("Defendants"), whereby Plaintiffs agreed to purchase Defendants' cooperative apartment located in New York City for $1.9 million. Compl. ¶ 6-7. Plaintiffs paid Defendants a ten-percent, or $190,000, deposit. Id. ¶ 8. Pursuant to paragraph 6.1 of the purchase contract, the sale of the apartment was conditioned upon the unanimous approval of Plaintiff's application by the building's Co-op Board ("Board"); if there was no such approval, Paragraph 6.3 of the contract provided that the security deposit would be refunded. Id. ¶ 9-10. The apartment was for his mother who was moving to the City from New Jersey.

As part of the Plaintiffs' application package, he was required to verify his financial assets to the Board. Plaintiffs represented assets totaling $89 million dollars, which included $1.8 million in cash, $17.5 million in real estate, and $19 million in securities. In addition, Plaintiff Dennis Nathan listed his interest in his company, Communication Components, Inc. at an estimated value of $50 million.

While reviewing Plaintiff's purchase application, the Board became aware of Plaintiff Dennis Nathan's previous felony conviction, and requested more information. On June 28, 2006, Plaintiff's attorney, Bradley Shaw, provided the Board with a letter of explanation. Attached to the letter were copies of both the Criminal Judgment which included Nathan as a Defendant and excerpts from the Third Circuit opinion.

1

Subsequently, on July 13, 2006, the Board rejected Plaintiffs' application; on July 17, 2006, Plaintiffs demanded return of the $190,000 deposit. Compl. ¶ 12-13. Defendants refused, claiming that they were entitled to keep the deposit. Id. ¶ 15. On August 4, 2006, Plaintiffs filed a complaint seeking damages in the amount of the deposit, plus interest as well as attorneys' fees and court costs. Defendants responded on October 9, 2006, denying wrongdoing and counterclaiming that Plaintiffs, in bad faith, submitted an incomplete application package as required by the purchase contract and that therefore Defendants were entitled to retain the deposit.

A jury trial was held from July 9, 2007 to July 12, 2007. The jury found in favor of Plaintiffs, and judgment was entered in the amount of $190,000 on July 13, 2007. Subsequently, the parties both submitted post-judgment motions. Plaintiffs filed a motion to amend the judgment to include pre- and post-judgment interest as well as attorneys fees. Defendants filed a renewed motion for judgment as a matter of law or, in the alternative, a new trial.

## II. DISCUSSION

**Defendant's Motions**

   **A. Motion for Judgment as a Matter of Law**

Pursuant to Fed. R. Civ. P. 50, Defendants move for judgment as a matter of law. A Rule 50 motion for judgment as a matter of law should only be granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on that issue." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998).

Defendants predicate their motion on the argument that Plaintiff's failure to verify their total assets in the application submitted to the Board constitutes bad faith, default, and/or misrepresentation entitling Defendants to retain the $190,000 security deposit.[1] On their Board application, Plaintiffs listed assets totaling nearly $90 million. Def. Mot. for Judgment as a Matter of Law 1. These assets included approximately $39 million in cash, real estate and various securities—all of which were verified in the application. See Pl. Memo. in Opp. to Mot.

---

[1] In making a Rule 50 motion at the close of Plaintiff's case, Defendants also argued that Plaintiff's "fraudulent concealment and nondisclosure of his felony conviction induced Defendants to enter into the Contract of Sale and that [Plaintiff] also initially concealed his conviction from the Coop Board." However, there is no evidence that Defendants agreed to sell to Plaintiff based on any assertion by Plaintiff that he had no prior felony convictions; further, the Board upon request received a letter explaining Plaintiff's felony, along with an attached copy of the Criminal Judgment as well as excerpts from the Third Circuit opinion, this argument is unavailing.

2

for Judgment as a Matter of Law Ex. 1. On the other hand, Defendants argue that Plaintiff Dennis Nathan failed to verify the $50 million valuation of his company, and that this omission constitutes a misrepresentation or bad faith entitling them to retain the deposit pursuant to ¶ 13.1 of the contract.[2] Def. Reply Mem. 1.

Defendants' argument in support of their motion is unavailing. If the Board had lingering questions about Plaintiffs assets, the application review process provided ample time and opportunity for them to request additional information before deciding on Plaintiff's application.[3] However, evidence produced at trial indicated that Plaintiffs' "financials were acceptable" to the Board. Def. Ex. E. Moreover, as shown at trial the Board application contained Plaintiff Dennis Nathan's income tax return listing an annual adjusted gross income of over $10 million, including income derived from his company. Pl. Ex. 11. Finally, Plaintiff Dennis Nathan testified at trial concerning how he had valued his stake in the company using customary valuation techniques. Tr. at 120-122.

Therefore, based on the above evidence, it is reasonable that the jury concluded Plaintiffs failure to verify their total assets did not constitute bad faith or a misrepresentation entitling Defendants to keep the security deposit. Defendants' Motion for Judgment as a Matter of Law is denied.

**B. Motion for a New Trial**

In the alternative to their Rule 50 motion, Defendants move for a new trial pursuant to Fed. R. Civ. P. 59. A District Court "should grant a new trial if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998) (quoting Smith v. Lightning Bolt Products, Inc., 861 F.2d 363, 370 (2d Cir. 1988)). The core of this motion is that the Court improperly limited the

---

[2] ¶ 13.1 of the contract provides "In the event of a default or misrepresentation by Purchaser, Seller's sole and exclusive remedies shall be to cancel this Contract, retain the Contract deposit as liquidated damages and, if applicable, Seller may enforce the indemnity in ¶ 13.3 as to brokerage commissions or sue under ¶13.4." Itkowitz Decl. Ex. 1.
[3] Indeed, the whole point of the review process is to provide the Board with the opportunity to look over the application and, if it is found to be insufficient in some respect, to request that the applicant provide additional information. For example, when the Board, during its review of Plaintiff's application, became aware of and inquired about Plaintiff's felony, Plaintiff was more than forthcoming: Plaintiff's transactional attorney sent a copy of the Criminal Judgment as well as portions of the Third Circuit opinion from the criminal case under cover of a letter explaining the circumstances surrounding Plaintiff's felony. Similarly, the Board could have—but did not—request additional information regarding Plaintiffs assets.

3

use of evidence of Plaintiff's felony conviction for impeachment purposes, thereby prejudicing their case.

Fed. R. of Evid. 609(a)(2) provides:

> For the purpose of attacking the character for truthfulness of a witness…evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

When, as here, a witness has been convicted of a crime of dishonesty or false statement, the Court is required to allow such evidence.[4] As construed by the Second Circuit, "the presumption under Rule 609(a)(2)…is that the 'essential facts' of a witness' convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed are included within the 'evidence to be admitted for impeachment purposes.'" United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005).

As noted above, these "essential facts"—and more—were fully set forth for the jury at trial. A copy of Shaw's letter, including the Criminal Judgment and excerpts from the Third Circuit opinion from Plaintiff Dennis Nathan's felony trial, was introduced. Pl. Ex. 10. Defense counsel was permitted to read directly from the Criminal Judgment during his cross-examination of Plaintiff Dennis Nathan, and during his summation defense counsel was permitted to publish a portion of the letter to the jury as well as to argue the credibility issue. Tr. at 500-505. The jury was then charged that they could consider the felony conviction in evaluating Plaintiff's credibility, and the letter and attached judgment and Third Circuit opinion were sent to the jury for its deliberations.

The evidence concerning Plaintiff's felony conviction was both readily available to the jury and the jury was well aware of it when left to deliberate. Moreover, such evidence was more detailed than the "essential facts" required by Estrada. Therefore, I find no miscarriage of

---

[4] In contrast, when considering whether to allow evidence of crimes not involving dishonesty or false statement, Fed. R. of Evid. 609(a)(1) provides that a Court may disallow such evidence if, pursuant to Fed. R. of Evid. 403 the Court determines that the probative value of such evidence will be substantially outweighed by the risk of prejudice, confusion, or waste of time. See Estrada, 430 F.3d at 615-16 ("The only difference between [Rule 609(a)(1) and (a)(2)] is that evidence of convictions for crimes involving "dishonesty or false statement," whether felonies or misdemeanors, *must* be admitted under Rule 609(a)(2) as being *per se* probative of credibility, while district courts, under Rule 609(a)(1), *may* admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403.") (emphasis in original).

justice or seriously erroneous result on the part of the jury. Defendants' Motion for a New Trial is denied.

**Plaintiff's Motion for Amended Judgment**

    **A. Pre- and Post-Judgment Interest**

Pursuant to Fed. R. Civ. P. 59, Plaintiffs have requested that the Court amend the judgment to include an award of pre-judgment interest. See, e.g., Paddington Partners v. Bouchard, 34 F.3d 1132 (2d Cir. 1994) (award of pre-judgment interest is properly sought by way of a motion to alter or amend the Court's judgment under Fed. R. Civ. P. 59(e)). "[U]nder New York law, 'prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.'" Graham v. James, 144 F.3d 229, 239 (2d Cir. 1998) (quoting Adams v. Lindblad Travel, Inc., 730 F.2d 89, 93 (2d Cir. 1984)). See NY CPLR § 5001. Interest accrues from the earliest date the cause of action arose. See NY CPLR § 5001(b).

Here, the Board rejection took place on July 13, 2006, and Defendants were obligated to return Plaintiffs' deposit within 7 business days thereafter—i.e. by July 24, 2006.[5] Judgment was entered 355 days later, on July 13, 2007. The interest accrues at 9% per annum, see NY CPLR § 5004, and therefore amounts to $16,631.75. Furthermore, Plaintiffs are entitled to post-judgment interest calculated at 9% per annum from the date the judgment was entered, July 13, 2007. NY CPLR §§ 5002, 5003, 5004. Plaintiffs motion to amend the judgment as to pre- and post-judgment interest is granted.

    **B. Attorneys Fees**

A "fundamental aspect of the United States judicial system is the requirement that parties provide for their own costs associated with litigation. Indeed, under the 'American Rule,' 'absent statute or enforceable contract, litigants pay their own attorneys' fees.'" Doe v. Karadzic, 2001 U.S. Dist. LEXIS 12928 at *5 (S.D.N.Y. Aug. 27, 2001); see Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y, 421 U.S. 240, 247 (1975). Thus, the key inquiry here is whether the purchase contract between Plaintiffs and Defendants provides for payment of attorneys fees in a dispute between the parties.

Plaintiffs' claim for attorneys fees is based on the indemnification provision contained in ¶ 13.3 of the contract of sale, which provides in pertinent part:

---

[5] See Itkowitz Decl. Ex. 1

> Subject to the provisions of ¶ 4.3, each party indemnifies and holds harmless the other against and from any claim…resulting from the Indemnitor's breach of any of its representations or covenants stated to survive Closing, cancellation or termination of this Contract. Purchaser indemnifies and holds harmless Seller against and from any claim…resulting from the Lease obligations accruing from and after the closing. Each indemnity includes, without limitation, reasonable attorneys' fees and disbursements, court costs and litigation expenses arising from the defense of any claim and enforcement or collection of a judgment under this indemnity, provided the indemnitee is given Notice and opportunity to defend the claim.

Plaintiffs argue that this language clearly and unequivocally contemplates that they may recover attorneys fees from Defendants in this breach of contract action. I disagree.

The New York Court of Appeals articulated the governing law[6] on this issue in Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 548 N.E.2d 903 (1989); see also Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) (stating that courts "should not infer a party's intention to provide counsel fees as damages for a breach of contract 'unless the intention to do so is unmistakably clear' from the language of the contract") (quoting Hooper) There, the court rejected a claim for attorneys' fees based on an indemnification provision, reasoning that "when a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed….The promise should not be found unless it can be clearly implied from the language." Id. at 491. In Hooper, the court noted that the indemnification clause included language concerning notice and the assumption of defenses, finding that such language "unmistakably relate[s] to third party claims"; in addition, the court further noted that the indemnification provision referred to claims typically made by third parties. Id. at 491-493. See also, Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20-21 (2d Cir. 1996) (applying New York law and holding that the language of an indemnity clause was clearly read as applying to third-party claims and was therefore not applicable to disputes between the parties to the contract); Canpartners Investments IV, LLC v. Alliance Gaming Corp., 981 F.Supp. 820 (S.D.N.Y. 1997) (following Hooper rationale to reject claim for attorneys' fees because language was not "unmistakably clear").[7]

---

[6] New York substantive law governs Plaintiffs' claim to attorneys fees under the contract. Banker v. Nationwide Mut. Fire Ins. Co., 977 F.3d 47, 53 (2d Cir. 1994) (stating that in a diversity action, "[s]tate law creates the substantive right to attorneys' fees").

[7] For an example of contractual language that was "unmistakably clear" in providing for recovery of attorneys' fees in a dispute between the parties, see Bristol Inv. Fund, Inc. v. Carnegie Intern. Corp., 302 F.Supp.2d 177 (S.D.N.Y. 2003). There, the court awarded attorneys' fees, noting the contracts broad

Similarly, ¶ 13.3 contains language providing that the indemnitee must be given "Notice and an opportunity to defend the claim."[8] Furthermore, looking beyond ¶ 13.3 to other provisions contained in the contract, there is further evidence that the indemnification provision applies to third-party claims and not disputes between the parties themselves. Most significant in this regard is ¶ 13.1, which provides that "Seller may enforce the indemnity in ¶ 13.3 as to brokerage commissions." In other words, as in Hooper, the language at issue here is not so "unmistakably clear" as to evidence an intent that it apply to disputes between the parties; rather, it is clear that ¶ 13.3 applies to third-party disputes, perhaps the most easily-imagined of which is when a broker seeks to recover a lost commission when one of the parties defaults on a purchase contract. Plaintiffs' motion for an award of attorneys' fees is denied.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment as a matter of law or, in the alternative, for a new trial is DENIED. Plaintiffs' motion for pre- and post-judgment interest is GRANTED. Plaintiffs' motion for attorneys' fees is DENIED.

The Clerk is instructed to close this motion and remove it from the docket.

**IT IS SO ORDERED.**
**New York, New York**
**December _____, 2007**

U.S.D.J.

---

language: "Paragraph 8(a) of the Securities Purchase Agreement and paragraph 11(d) of the Registration Rights Agreement both state: 'The party which does not prevail in any dispute arising under this agreement shall be responsible for all fees and expenses, including attorneys' fees, incurred by the prevailing party in connection with such dispute.'" Id. at 178. Additionally, the court noted that other provisions of the contract expressly provided for attorneys fees to be paid in disputes between the parties: "Paragraph 4.5 of the Debenture states: 'If default is made in the payment of this Debenture, the Borrower shall pay the Holder hereof costs of collection, including reasonable attorneys' fees.'" Id.

[8] As the court observed in Hooper: "the requirement of notice and assumption of the defense has no logical application to a suit between the parties." 548 N.E.2d at 493.